AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

In the Matter of the Search of
A Samsung S20

Case No. 25 - 5507MB

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

### As further described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 12/2/25 *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: Nov. 14 2025 @ 5:00 p.m.

Judge's signature

City and state: <u>Phoenix, Arizona</u>     <u>Honorable Deborah M. Fine, U.S. Magistrate Judge</u>
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a Samsung Galaxy S20 (hereafter the "**SUBJECT CELLULAR TELEPHONE**").    The **SUBJECT CELLULAR TELEPHONE** is currently at the Phoenix Police Property Management building, located at 100 E. Elwood Street, Phoenix, Arizona 85040.

This warrant authorizes the forensic examination of the **SUBJECT CELLULAR TELEPHONE** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1.　Any records and information between December 1, 2024 and August 15, 2025 found within the digital contents of the **SUBJECT CELLULAR TELEPHONE** that relate to violations of Title 18, United States Code ("U.S.C.") § 875 (c) (Interstate Threats), and 18 U.S.C. § 247(a)(2) (Obstruction of Persons in the Free Exercise of Religious Beliefs), including:

    a.　all information related to the sale, purchase, receipt, or use of firearms;

    b.　all information related to potential threats or threatening communications;

    c.　all information related to the research of potential targets, including research into synagogues in Arizona;

    d.　any information recording schedule or travel;

    e.　evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

    f.　contextual information necessary to understand the above evidence.

2.　Any records and information found within the digital contents of the **SUBJECT CELLULAR TELEPHONE** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information;

mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of:<br>A Samsung S20 | Case No. 25-5507MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 875 | Interstate Threats |
| 18 U.S.C. § 247(a)(2) | Obstruction of Persons in the Free Exercise of Religious Beliefs |

The application is based on these facts:

### See attached Affidavit of Task Force Officer Ryan S. Conway

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Ben Goldberg

Digitally signed by BENJAMIN GOLDBERG
Date: 2025.11.13 14:32:37 -07'00'

_____
*Applicant's Signature*

Ryan S. Conway, Task Force Officer, FBI
*Printed name and title*

Subscribed to and sworn telephonically before me.

Date: Nov. 18, 2025 @ 5:00 p.m.

City and state: Phoenix, Arizona

_____
*Judge's signature*

Honorable Deborah M. Fine, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a Samsung Galaxy S20 (hereafter the "**SUBJECT CELLULAR TELEPHONE**").    The **SUBJECT CELLULAR TELEPHONE** is currently at the Phoenix Police Property Management building, located at 100 E. Elwood Street, Phoenix, Arizona 85040.

This warrant authorizes the forensic examination of the **SUBJECT CELLULAR TELEPHONE** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1.      Any records and information between December 1, 2024 and August 15, 2025 found within the digital contents of the **SUBJECT CELLULAR TELEPHONE** that relate to violations of Title 18, United States Code ("U.S.C.") § 875 (c) (Interstate Threats), and 18 U.S.C. § 247(a)(2) (Obstruction of Persons in the Free Exercise of Religious Beliefs), including:

      a.  all information related to the sale, purchase, receipt, or use of firearms;

      b.  all information related to potential threats or threatening communications;

      c.  all information related to the research of potential targets, including research into synagogues in Arizona;

      d.  any information recording schedule or travel;

      e.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

      f.  contextual information necessary to understand the above evidence.

2.      Any records and information found within the digital contents of the **SUBJECT CELLULAR TELEPHONE** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information;

mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Ryan S. Conway, being first duly sworn, hereby depose and state as follows:

### I.    INTRODUCTION AND AGENT BACKGROUND

1.    I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone described more particularly in Attachment A (hereafter the "**SUBJECT CELLULAR TELEPHONE**"), and to extract the electronically stored information set forth in Attachment B, which represents evidence and/or instrumentalities of the criminal violations further described below.

2.    I am a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI") and have been since May 5, 2025. I am currently assigned to the Phoenix Field Office in Phoenix, Arizona, and I am a member of the Joint Terrorism Task Force, where my primary responsibility is investigating acts of domestic terrorism. I am also a sworn Peace Officer in the State of Arizona with the Tempe Police Department and have been since January 2006. As an FBI TFO, my duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of federal laws, particularly those laws found in Title 18 of the United States Code.

3.    The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

4.    Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all of the relevant facts known to law enforcement officers.

## II.    BASIS FOR PROBABLE CAUSE

### *Initial Investigation*

5.    On or about August 11, 2025, the FBI Phoenix office received a tip through the Arizona Counter Terrorism Information Center ("ACTIC")[1] about a Twitter/X account making threatening statements towards the Jewish community.  The tip was sent to ACTIC from a security organization that focuses on the security of synagogues and the Jewish community through intelligence gathering.

6.    Contained within the tip were a series of screenshots of postings, responses, videos, and photographs of the Twitter/X account. The tip also alleged that the user operating the account was "Kevin Charles Pyle" (sic). Based on this information, the Phoenix Police Department ("PPD") conducted their own investigation and identified Kevin Charles Pyles ("PYLES") as the user of the Twitter/X account.  PPD was able to use the email address registered to the account and, using law enforcement databases, identified PYLES as the user of that email account.  PYLES would also later confirm to PPD, as noted below, that he was the creator and sole user of the Twiter/X account.  During the investigation, law enforcement also determined that a two-door silver 2012 Chevrolet Camero convertible was registered to PYLES.

7.    On August 15, 2025, a confidential human source ("CHS") with a history of providing reliable information to the FBI, provided the FBI Phoenix office with additional screen captures of the Twitter/X account.  I was able to view several postings from the account, whether from the tip initially provided, the additional information provided by the CHS, or from publicly available online postings.  Some of the relevant postings include:

---

[1] The Arizona Counter Terrorism Information Center is a law enforcement fusion center between the Arizona Department of Public Safety, Arizona Department of Homeland Security, Federal Bureau of Investigation, and other state and local law enforcement agencies.

a. December 18, 2024 – replying to [redacted username] "my mp40 says your all fucked"

b. April 20, 2025 – "[2 lightening bolt emoji's] Already have my own baby penis sucker slayer MP40." A photograph of an MP 40 firearm was included with this post.

c. June 24, 2025 – "4th reich is here jews! I got my MP40". PYLES, in a later interview, stated that the purpose of this post was to scare Israel.

d. July 7, 2025 – "I am hitler. Start [fire emjoi] down synagogues and blackrock financial buildings. Just look them up and take them out if you're near one. I'd do it. It's worth the jail time for me. Fuck any feds that read this." PYLES, in a later interview, stated that his intention was the grab the government's attention, tell the Jewish community to "step off our country", and that 'I am Hitler' was a scare tactic towards Israel.

e. July 10, 2025 – "Start attacking synagogues! I'm planning on it."

f. July 10, 2025 - "Put propane cans by the synagogues and hit them far with a rifle. It's time to strike the Jews"

g. July 10, 2025 – "I'm not fucking joking when I say that I'm going to be the next to attack baby penis sucking jews. This is full-scale war people."

*Additional Investigation and Synagogue Incidents*

8.     During my review of the Twitter/X account, I also noticed a number of additionally concerning posts and videos. For instance, on August 8, 2025, PYLES posted "Arrest/kill the Epstein clients or I'm torching a synagogue with frens2. You're choice Feds." That same day, he also posted, in response to a posting about political events between the United States, Ireland, and Israel, "It's time to start threatening our government"

3

9.    I also viewed a video that was posted on the account on August 10, 2025. The video was posted with the caption "Fuck Israel. Fuck anything Jewish. I'm buying Jewish stuff and smashing it up as a hobby now." In reply to the video, the Twitter/X account further stated "Btw that's a synagogue in PHX where they suck baby penis."

10.    During the video, a white male was positioned in the driver's seat of a white or gray sedan parked in the roadway near the driveway of the Sha'arei Shalom Congregation in North Phoenix. The individual, seeing the synagogue's camera, displayed a drinking glass to the camera that had the word "Passover" on it. The individual then threw the glass into the driveway and said, "Fuck the Jews. Kill yourselves you little faggots. Get the fuck out of here," before driving away.

11.    On or about August 12, 2025, PYLES posted on his X account - "I'm well armed. If I see Feds, it's just Israeli soldiers in disguise and I will open fire. I'm not scared of baby c*** sucking jew government. Heil Hitler!"

12.    After viewing those postings, FBI agents interviewed the rabbi at Sha'arei Shalom Congregation on August 21, 2025. During the interview, the FBI was provided with Ring Video camera footage and still images from a July 11, 2025 incident that was recorded at the synagogue.

13.    According to the video and witness statements, at approximately 1:50 pm a silver two-door black-top convertible resembling the vehicle registered to PYLES parked in the synagogue parking lot. An individual wearing a black-hooded sweatshirt exited the vehicle, placed a flyer on the door of the synagogue, and then returned to his vehicle and left. Below are photographs taken from the video footage:





14.    The flyer had five images and stated, "Every single aspect of baby penis sucking is Jewish. Don't hate the flyers… Hate the baby penis vampires." On the flyer was a website, two QR codes, and the quote, "** These flyers were distributed randomly without malicious intent**".



15.    The rabbi did not report the July 11 incident to law enforcement as he could not fully identify the individual.

16.    I also interviewed a board member at Sha'arei Shalom Congregation, who told me that multiple members have begun to attend religious services less frequently as a result of the July 11 flyer and August 10 glass-throwing incidents. A photograph of the flyer and the circumstances of the incident were discussed among the members of the synagogue's board.

### *Arrest and Interview*

17.    On August 15, 2025, PYLES was arrested by the PPD and charged with one count of making a terrorist threat and one count of computer tampering, both felonies. During the arrest, Pyles had the **SUBJECT CELLULAR TELEPHONE** on him and PPD officers seized the **SUBJECT CELLULAR TELEPHONE.**

18.    That same day, PPD detectives conducted a post-Miranda custodial interview with PYLES. During the interview, PYLES admitted that the Twitter/X account was his

and that he was the only individual to have access to the account. PYLES was shown a series of postings from the account and admitted to making all of them.

19.    In the interview, PYLES told officers that he wanted to attack a synagogue to cause damage. PYLES espoused his hate and discontent for the Jewish community and other races, and said that he believed the Jewish community is impinging on the white race and the United States. PYLES blamed his inability to keep a job and get ahead in life on minority communities and stated he wanted to send a message to others in the country about what he believed the Jewish community was doing to this country.

20.    PYLES also admitted to throwing the glass at a synagogue and said it was an effort to say, "just get out of here." PYLES stated it was a symbolic statement showing that the Jewish culture is hated.

21.    Pyles claimed that he was not planning to torch a synagogue. He stated that if he were to attack a synagogue, he would not hurt anyone, he would just destroy the building. He did not believe he was not able to kill things. His efforts would be focused on the Jewish culture and synagogues to get his message across.

22.    On August 15, 2025, the PPD executed search warrants granted by the Maricopa County Superior Court on PYLES' vehicle and storage unit. Each search warrant resulted in the seizure of firearms – including one MP 40. His possession of this specific firearm was of particular concern due to the fact this firearm was pictured on his Twitter/X account and was referred to as his "baby penis sucker slayer".

23.    The **SUBJECT CELLULAR TELEPHONE** is currently in the lawful possession of the PPD, who, as described above, seized it upon arresting PYLES. Therefore, while the PPD might already have all necessary authority to examine the device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

24.    The **SUBJECT CELLULAR TELEPHONE** is currently in storage at the Phoenix Police Property Management building. In my training and experience, I know that the **SUBJECT CELLULAR TELEPHONE** has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the **SUBJECT CELLULAR TELEPHONE** first came into the possession of the PPD.

### III.    ITEMS TO BE SEIZED

25.    Based upon the facts contained in this Affidavit, I submit there is probable cause to believe that the items listed in Attachment B will be found in the contents of the **SUBJECT CELLULAR TELEPHONE**.

26.    Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, I know the following:

a.    Individuals who target minority communities through action or threats commonly use cellular telephones to either research their target communities or to sprea further threats. Therefore, evidence related to threatening and hate crime activity is likely to be found on the **SUBJECT CELLULAR TELEPHONE**.

b.    Individuals who target minority communities through action or threats will commonly have firearms intended to be used in conjunction with those threats and/or actions.  As noted above, PYLES was in possession of firearms, including one that he alluded to as a "slayer" of the Jewish community.  Therefore, evidence related to firearms and/or firearms use is likely to be found on the **SUBJECT CELLULAR TELEPHONE.**

27.    In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, I also request permission to seize any articles tending to establish the identity of persons who have dominion and control over the **SUBJECT CELLULAR TELEPHONE.**

## IV.    DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

28.    As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the **SUBJECT CELLULAR TELEPHONE**. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

29.    *Probable cause.* I submit that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the **SUBJECT CELLULAR TELEPHONE** for at least the following reasons:

a.    I know that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.    Based on my knowledge, training, and experience, I know that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files;

9

information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

    c. Based on my knowledge, training, and experience, I know that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

    d. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   30. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the **SUBJECT CELLULAR TELEPHONE** because:

    a. Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the

11

offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

        c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

        d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

        e.     Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

        31.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the **SUBJECT CELLULAR TELEPHONE**, including the use of computer-assisted scans.

32.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.    CONCLUSION

33.    I submit there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of Title 18, United States Code ("U.S.C.") § 875 (c) (Interstate Threats), and 18 U.S.C. § 247(a)(2) (Obstruction of Persons in the Free Exercise of Religious Beliefs) are likely to be found in the contents of the **SUBJECT CELLULAR TELEPHONE** further described in Attachment A.

Task Force Officer Ryan S. Conway
Federal Bureau of Investigation

Subscribed and sworn telephonically before me this __18__ day of November, 2025.  5:00p-m

HONORABLE DEBORAH M. FINE
United States Magistrate Judge

13